USDC SDNY
DOCUMENT ELECTRONICALLY
FILED
DOC#: _____
DATE FILED: 9-22-16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ x

RIKER, DANZIG, SCHERER, HYLAND &
PERRETTI, LLP,

           **Plaintiff and Defendant in**
           **Counterclaim,**

           **-against-**

PREMIER CAPITAL, LLC, and PREMIER
CAPITAL, INC.,

           **Defendants and Plaintiffs**
           **in Counterclaim.**

------------------------------------------------------ x

**15-cv-8293**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Riker, Danzig, Shcerer, Hyland & Perretti, LLP ("Riker"), a law firm, filed this

action against Premier Capital, LLC ("PCL") and Premier Capital, Inc. ("PCI") (collectively,

"Premier"), its former clients, to collect attorneys' fees it allegedly earned in representing

Premier. Premier asserted counterclaims against Riker for misrepresentation, breach of contract,

unjust enrichment, and legal malpractice, as well as a claim under Massachusetts's Consumer

Protection Act, M.G.L. ch. 93A § 11 ("Chapter 93A"). Presently before the Court is Riker's

motion to dismiss the counterclaims. For the reasons discussed below, the motion is granted in

part and denied in part.

## BACKGROUND

### I.    Factual Background

The Court recites here only the facts pertinent to the counterclaims. For the purposes of

this motion, the Court takes as true the allegations contained in Premier's counterclaims.

Riker is a New Jersey limited liability partnership with a principal place of business in New Jersey. (Amd. Ans. ¶ 3, ECF No. 29.)[1] PCL is a Delaware limited liability corporation with a principal place of business in Wilmington, Massachusetts, and PCI is a Massachusetts corporation with a principal place of business in Wilmington, Massachusetts. (*Id.* at ¶¶ 1-2.) The counterclaims arise out of five matters in which Premier engaged Riker to represent it.

### A. Taub Matter

In July 2012, Premier engaged Riker to handle a mortgage foreclosure action involving Leonard Taub's Long Island, New York property, which was secured by a mortgage held by Premier ("Taub Matter"). (Amd. Ans. ¶ 19.) Riker submitted a proposal and budget to Premier on or about July 12, 2012, estimating that the engagement would likely cost between $16,000 and $26,000. (*Id.* at ¶ 20.) The agreement provided that any tasks or expenses that were outside the scope of the budgets or proposals would need Premier's prior approval. (*Id.*) Per Premier, Riker deliberately understated its budget and proposed scope of work to induce Premier into engaging Riker to handle this matter. (*Id.* at ¶21.) Riker later performed related work that was not contemplated in the original proposal, concerning Taub's bankruptcy filing. (*Id.* at ¶ 22.) Riker represented that this work would cost no more than $5,000. (*Id.*) Based on that representation, Premier authorized Riker to prosecute an action alleging violation of the automatic bankruptcy stay by another of Taub's creditors. (*Id.* at ¶ 23.)

Premier has paid Riker more than $78,000 with respect to the Taub Matters, an amount in excess of the original proposal and the supplemental bankruptcy proposal. (Amd. Ans. at ¶ 24.) Riker seeks an additional $21,000 for the foreclosure work and $17,000 for the bankruptcy work.

---

[1] Premier's amended answer includes two distinct sets of numbered paragraphs. The first set answers Riker's amended complaint, and the second set alleges the counterclaims. Unless otherwise noted, references to "Amd. Ans." refer to the second set, those alleging the counterclaims.

(*Id.*) Had Riker submitted a budget including the substantially increased costs and fees it ultimately charged, Premier would not have engaged Riker to perform the work. (*Id.* at ¶ 25.)

**B.     DNR Construction Matter**

Also in July 2012, Premier engaged Riker to represent it in connection with a mortgage foreclosure action against DNR Construction, LLC. (Amd. Ans. ¶ 32.) Premier engaged Riker based on a budget provided by Riker, which estimated that it would cost between $11,000 and $17,000 to complete the foreclosure. (*Id.* at ¶ 34.) The agreement provided that any tasks or expenses that were outside the scope of the budgets or proposals would need Premier's prior approval. (*Id.*)

By October 2013, Premier had paid Riker more than $40,000, an amount that exceeded the original budget. (Amd. Ans. ¶ 35.) On October 31, 2013, against the express direction of Premier, Riker filed an Affirmation with the New York Supreme Court, Richmond County, in support of a request for attorneys' fees. (*Id.* at ¶ 36.) Riker represented that as of that date it had incurred $46,038 in fees and represented that an additional 15 hours' work would be required to complete the case, adding approximately $5,000 to its fees. (*Id.*) Between November 7, 2013 and April 2014, Premier paid an additional $32,000 for the DNR matter, exceeding the $5,000 that Riker had estimated necessary to complete work on the matter. (*Id.* at ¶ 37.)

On November 21, 2014, the New York Supreme Court entered its judgment of foreclosure and sale and determined that an award of $8,000 in legal fees was reasonable. (Amd. Ans. ¶ 39.) To date, Premier has paid Riker approximately $70,500, and Riker claims that Premier owes an additional $10,000 in the matter. (*Id.*)

**C.     Dunn Matter**

3

In August 2012, Premier engaged Riker to defend against an action brought by Kerri Dunn alleging improper debt collection practices ("Dunn Matter"). (Amd. Ans. ¶ 26.) Prior to Premier engaging Riker, Riker represented that it would cost between $15,000 and $20,000 to handle the Dunn matter through the summary judgment stage. (*Id.* at ¶ 27.) Riker also represented that there was a reasonably good, albeit "less than excellent," chance of prevailing on summary judgment. (*Id.*) The agreement provided that any tasks or expenses that were outside the scope of the budgets or proposals would need Premier's prior approval. (*Id.*) Based upon these representations, Premier engaged Riker to handle the Dunn matter, rather than settle it. (*Id.* at ¶ 28.) Premier lost at summary judgment and settled the claims at substantial cost. (*Id.* at ¶ 29.) Premier has paid Riker more than $24,000, an amount that exceeded the original proposal, and Riker claims that Premier owes an additional $74,000 in legal fees. (*Id.* at ¶ 30.) Had Riker submitted a budget including the substantially increased costs and fees it ultimately charged, Premier would not have engaged Riker to perform the work. (*Id.* at ¶ 31.)

### D.    Roche-Kelly Matter

In November 2013, Premier engaged Riker to represent it in connection with the bankruptcy filing of Delia Roche-Kelly, against whom it held a money judgment in excess of $800,000 ("Roche-Kelly Matter"). (Amd. Ans. ¶ 4.) Premier engaged Riker to attend a Creditors' Meeting in order to preserve Premier's interest in the money judgment it held against Roche-Kelley. (*Id.*) Riker failed to attend the Creditors' Meeting and also failed to seek or conduct any discovery in connection with the bankruptcy. (*Id.* at ¶ 5.) Riker also failed to preserve Premier's right to object to Roche-Kelly's discharge from bankruptcy. (*Id.*) Finally, on July 3, 2014, and July 7, 2014, Riker materially misrepresented Premier's rights with respect to filing an adversary proceeding and taking discovery. (*Id.* at ¶ 6.)

Roche-Kelly eventually obtained a discharge of Premier's judgment and precluded Premier from taking any discovery of the debtor. (Amd. Ans. ¶ 7.) At the same time, Riker tried to convince the bankruptcy trustee to engage Riker as counsel. (*Id.* at ¶ 8.) Riker billed (and collected from) Premier in excess of $25,000 in legal fees. (*Id.*) These fees were duplicative and covered tasks undertaken without the prior approval of Premier, and the fees and expenses exceeded the budget Riker had submitted to Premier. (*Id.* at ¶ 10.) Had Riker submitted a budget including the substantially increased costs and fees it ultimately charged, Premier would not have engaged Riker to perform the work. (*Id.* at ¶ 10.)

### E.    Gasson Matter

In May 2013, Premier engaged Riker to represent it in connection with the bankruptcy filing of Anthony Gasson ("Gasson Matter"). (Amd. Ans. ¶ 11.) Premier engaged Riker to obtain discovery of the debtor and to object to Gasson's bankruptcy discharge. (*Id.*) The engagement was based upon a written proposal and budget submitted by Riker for the tasks, fees, and expenses required to conduct the discovery and prosecute the bankruptcy discharge action. (*Id.* at ¶ 12.) The parties agreed that any tasks or expenses in excess of or outside the scope of the budgets and proposals would need to be pre-approved by Premier. (*Id.*) Per Premier, Riker grossly understated the tasks, fees, and costs associated with the budget for this matter and did so to induce Premier to engage Riker to perform those services. (*Id.* at ¶¶ 13,14.) Riker has since invoiced Premier for fees that Premier did not approve and that exceeded the approved budget. (*Id.* at ¶ 16.) To date, Premier has paid Riker in excess of $44,000 in connection with the Gasson Matter, an amount that exceeds the agreed upon budget, and Riker seeks an additional $74,000 in the matter. (*Id.* at ¶ 17.) Had Riker submitted a budget including the substantially increased costs

and fees it ultimately charged, Premier would not have engaged Riker to perform the work. (*Id.* at ¶ 18.)

## II.     Procedural History

Riker initiated this action against Premier on October 21, 2015. (ECF No. 1.) Riker thereafter filed an amended complaint on October 22, 2015. (Amd. Compl., ECF No. 8.) Premier filed its answer and counterclaims against Riker on November 16, 2015 (ECF No. 13), and filed an amended answer and counterclaims on December 23, 2015. (Amd. Ans.)

On February 12, 2016, Riker moved to dismiss Premier's counterclaims for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). (Riker's Mem., ECF No. 39.) Premier filed its opposition on March 11, 2016 (Premier's Opp., ECF No. 47), and Riker filed its reply on March 25, 2016. (Riker's Reply, ECF No. 57.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). These same tenets apply to motions to dismiss counterclaims: "the allegations in the counterclaims are accepted as true and all reasonable inferences must be drawn in the pleader's favor." *Gottlieb,*

*Rackman & Reisman, P.C. v. ZenColor Corp.*, No. 13 Civ. 5715 (JGK), 2015 WL 4206982, at *1 (S.D.N.Y. July 10, 2015) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)). However, the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 681 (citing *Twombly*, 550 U.S. at 555). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & iStone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

Fraud claims are subject to a heightened pleading standard under Fed. R. Civ. P. 9(b) ("Rule 9(b)"), which requires that the allegations "state with particularity the circumstances constituting fraud or mistake." To satisfy the particularity requirement, a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (citation and internal quotation marks omitted).

To decide a motion to dismiss, the court "may consider facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted). The Court may also consider "matters of which judicial notice may be taken." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

# DISCUSSION

## I.      Governing Law

Defendant asserts common-law claims, as well as a Massachusetts statutory claim. As to

the common law claims, "the parties have not addressed what law applies in this case, but they

have applied New York law in their briefs and thereby have consented to its application here."

*Sylhan, LLC v. Schwarzkopf Techs. Corp.,* No. 01 Civ. 4368, 2002 WL 32605796, at *3

(E.D.N.Y. Aug. 9, 2002) (alteration and citation omitted). Thus, the Court will apply New York

standards to determine the validity of Premier's common-law claims.

As to the Massachusetts statutory claim, the parties apply Massachusetts substantive law,

and a mix of First Circuit and Second Circuit procedural law. Although it is uncontested that the

substantive requirements of the Chapter 93A claim are governed by the laws of Massachusetts,

"any pleading requirements are governed by federal law, which controls procedural matters in

diversity cases." *Schwartzco Enterprises LLC v. TMH Mgmt., LLC,* 60 F. Supp. 3d 331, 361

(E.D.N.Y. 2014). More specifically, procedural issues are governed by the law of this Circuit,

rather than the First Circuit, because "[t]his Court is required to follow the precedent of the Court

of Appeals for the Second Circuit with respect to the interpretation and application" of federal

procedural rules. *Northwestern Mut. Life Ins. Co. v. Banc of Am. Sec. LLC,* 254 F. Supp. 2d 390,

396 (S.D.N.Y. 2003).

## II.     Premier's Counterclaims

### A.      Misrepresentation

Premier brings a counterclaim for misrepresentation, in connection with the Taub, Dunn,

DNR Construction, and Gasson Matters. (Amd. Ans. ¶ 43.) Riker argues that this claim must be

dismissed because it is not pled with the particularity required by Rule 9(b), it does not allege

8

fraudulent intent as required to sustain a claim for fraudulent misrepresentation, and it does not involve statements that can be characterized as misrepresentation.

As an initial matter, Premier alleges a counterclaim of "misrepresentation," and the parties disagree over whether the counterclaim is one of fraudulent misrepresentation or negligent misrepresentation. The two claims differ in their elements. To state a cause of action for fraudulent misrepresentation under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 700-01 (S.D.N.Y. 2012) (quoting *Crigger v. Fahnestock & Co.,* 443 F.3d 230, 234 (2d Cir. 2006)). To state a cause of action for negligent misrepresentation under New York law, on the other hand, a plaintiff must allege: "'(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (citation omitted).

Aside from their distinct elements, the two claims have at times been found to implicate distinct pleading standards. It is beyond dispute that fraudulent misrepresentation claims sound in fraud and are subject to Rule 9(b)'s heightened pleading standard. *See, e.g., Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 179 (2d Cir. 2015) ("[T]he complaint fails to plead a fraudulent misrepresentation with the particularity required by Rule 9(b) . . ."). Whether negligent misrepresentation claims are always subject to Rule 9(b)'s heightened standard is a matter of greater debate. "In this circuit, many district courts have proceeded on the assumption that the Second Circuit has not explicitly ruled on whether Rule

9(b) . . . applies to New York negligent misrepresentation claims," *Schwartzco*, 60 F. Supp. 3d at 349 (collecting cases); *see also Eternity Global*, 375 F.3d at 188 ("Rule 9(b) may or may not apply to a state law claim for negligent misrepresentations."). Most of these courts have opted to apply Rule 9(b) to the negligent misrepresentation claims in front of them. *See Schwartzo*, 60 F. Supp. at 349 (collecting cases). Some have determined that Rule 9(b) applies only where the claim resembles a fraud claim. *See Woori Bank*, 910 F. Supp. at 705. But other courts have concluded that it is settled law that Rule 9(b)'s heightened standard applies to *all* claims of negligent misrepresentation, relying on *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583-84 (2d Cir. 2005), where the Second Circuit adopted without comment a district court's application of Rule 9(b) to a negligent misrepresentation claim. *See AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 360 (S.D.N.Y. 2014) ("[A]ny claim for misrepresentation—either fraudulent or negligent—must meet Rule 9's heightened pleading standards . . ."); *Schwartzo*, 60 F. Supp. 3d at 350 ("[T]he Second Circuit concluded in no uncertain terms, albeit without much in the way of explanation, that claims for negligent misrepresentation under New York law 'must be pled in accordance with the specificity criteria of Rule 9(b)'" (quoting *Aetna*, 404 F. 3d at 583)); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14 Civ. 3826, 2015 WL 5579872, at *24 (E.D.N.Y. Sept. 22, 2015) (same).

Whether or not Rule 9(b)'s heightened standard applies to *all* claims of negligent misrepresentation, it does apply here, as the claim sounds in fraud. Premier's claim is based in part on allegations that Riker "deliberately understated" the budgets, tasks, costs, and fees associated with two matters (Amd. Ans. ¶¶ 15, 21, 42). Regardless of how Premier "characterize[s] claims by the label used in the pleading[,] these nominal efforts are unconvincing where the gravamen of the complaint is plainly fraud and no effort is made to

show any other basis for the claims levied . . ." *Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008) (quoting *Rombach*, 355 F.3d at 172); *see also Woori*, 910 F. Supp. 2d at 698 (applying Rule 9(b) to negligent misrepresentation claim where plaintiff failed to distinguish between alternate theories of fraud and negligence).

Thus, whether Premier intended to bring a claim of negligent misrepresentation or fraudulent misrepresentation, the claim is subject to Rule 9(b), and it must be dismissed for failure to meet that heightened standard. To meet Rule 9(b), Premier must specify the statements at issue, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent. *See Eternity Global*, 375 F.3d at 187. Premier fails to make such allegations in its counterclaim.

First, Premier does not identify the speakers. It refers only to acts of Riker: for instance, "Riker represented to Premier" (Amd. Ans. ¶ 27); "Riker grossly understated" (*Id.* at ¶ 13); and "Riker deliberately understated" the budget figures in question (*Id.* at ¶ 14). These general assertions do not sufficiently identify an individual speaker. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 199 (S.D.N.Y. 2011) (where complaint alleged that "various officers and employees" of defendants provided statements, finding that "[c]learly, these generalized allegations fail to identify the speakers whose statements might expose [the defendant] to liability."); *id.* (collecting cases); *Total Equity Capital, LLC v. Flurry, Inc.*, No. 15 Civ. 4168 (JMF), 2016 WL 3093993, at *3 (S.D.N.Y. June 1, 2016) (noting that the Second Circuit has found dismissal appropriate where there are "allegedly fraudulent statements that were unattributed to a particular speaker, even though the plaintiff "allege[d] on information and belief that the unattributed statement was made by an agent of the defendant" (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 264-65 (2d Cir. 1993)).

Second, Premier offers few supporting details to establish the "where and when" of the statements. Most glaringly, in the Dunn Matter, Premier alleges only that "[p]rior to [Premier] representing Riker, Riker represented to Premier" certain budget figures. (Amd. Ans. ¶ 27). While other allegations are more specific as to when the statements were made, there are no allegations whatsoever as to where the statements were made. *See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 216 (S.D.N.Y. 2007) (dismissing fraud claim where complaint alleged only that statements were made by unnamed representatives of defendant, in a certain year or "before and after the signing" of a particular document and "fail[ed] to identify where these representations were made."). Indeed, Premier "fail[s] to identify who at [Riker] made the representations, fail[s] to narrow the time frame within which the representations were made . . . fail[s] to state where the misrepresentations were made, and fail[s] to provide any information regarding what form the misrepresentation took," *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 248 (S.D.N.Y. 2011), for instance by identifying whether the misrepresentations were oral or written. Therefore, Premier has failed to meet Rule 9(b)'s heightened standard. *See id.* (collecting cases).

While Premier cannot claim to have met this heightened standard, it argues that its failure to do so in its complaint is immaterial, as the parties have exchanged discovery disclosing the identity of speakers and shedding light on the timing and form of certain misrepresentations. (Premier's Opp. 12-13.) Be that as it may, "[d]iscovery is not a substitute for compliance with Rule 9(b)." *Arnold Chevrolet LLC v. Tribune Co.*, No. 04 Civ. 3097, 2007 WL 2743490, at *5 (E.D.N.Y. Sept. 17, 2007). Even if the parties supply each other with the missing information during discovery, "Rule 9(b) mandates *pleading* these circumstances." *Silver Top Ltd. v. Monterey Indus. Inc.*, No. 94 Civ. 5731 (LMM), 1995 WL 20266, at *6 (S.D.N.Y. Jan. 19, 1995)

(emphasis added). To allow discovery to substitute for compliance with Rule 9(b) is to put the cart before the horse, as it "ignores the fact that discovery has to be tied to a pleading which passes muster . . ." *Arnold Chevrolet*, 2007 WL 2743490, at *5.

Premier also suggests that it may be relieved of its duty to meet Rule 9(b) because it has not yet received "specific discovery." (Premier's Opp. 13.) The Court takes this to be an argument that the facts are peculiarly within the possession and control of Riker. If it were shown that the facts were peculiarly within the possession and control of the opposing party, then it is true that Premier could plead facts "upon information and belief." *See Minnie Rose LLC v. Yu*, --- F. Supp. 3d ---, No. 15 Civ. 1923, 2016 WL 1049020, at *9 (S.D.N.Y. Mar. 11, 2016). But even then, "the plaintiff still bears the burden of alleging facts upon which her or his belief is founded." *Id.* (citation omitted). Here, Premier has not alleged sufficient facts even on information and belief, nor has Premier shown that the facts are peculiarly within the possession and control of Riker. As Premier itself acknowledges, "the parties communicated extensively via email . . . Both Riker and Premier are in possession of those emails." (Premier's Opp. 12 n. 2.) Thus, this carveout is irrelevant. Premier's misrepresentation claim must be dismissed for failure to meet Rule 9(b)'s heightened standard, and the Court need not consider Riker's other arguments for dismissal.

### B.   Massachusetts General Laws Ch. 93A

Premier next asserts a claim under Massachusetts General Laws Ch. 93A § 11, alleging:

> Riker's deliberate and or reckless underestimations of the scope and costs of legal services to [Premier] with the intention of inducing [Premier] to engage Riker and Riker's gross overbilling of [Premier] for unauthorized tasks and fees constitutes unfair and deceptive practices within the meaning of [Chapter 93A].

(Amd. Ans. ¶ 52.) Riker argues that this claim, too, is subject to the heightened Rule 9(b) pleading requirement, while Premier disagrees, relying on a District of Massachusetts case that

13

held that Rule 9(b) does not apply to a claim of negligent misrepresentation. (Premier.'s Opp. 16 (citing *Masso v. United Parcel Serv. of Am., Inc.*, 884 F. Supp. 610, 615 (D. Mass. 1995)).

As discussed above, this Court follows Second Circuit precedent with respect to the interpretation and application of procedural rules, and in particular, this Court "is bound by Second Circuit law pertaining to the applicability of Rule 9(b)." *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13 MD 2450 (KMK), 2015 WL 7018369, at *13 n. 9 (S.D.N.Y. Nov. 12, 2015) (citing *Northwestern*, 254 F. Supp. 2d at 396). "Although the substantive requirements of the [out-of-state consumer protection statute] are governed by the law of their respective states of origin, any pleading requirements are governed by federal law, which controls procedural matters in diversity cases." *Leonard v. Abbott Labs., Inc.*, No. 10 Civ. 4676, 2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012) (applying Second Circuit pleading standards to claims brought under the New Hampshire Consumer Protection Act and the Texas Deceptive Trade Practices Act); *see also Ford Fusion*, 2015 WL 7018369, at *13 n. 9 (considering claims brought under a number of states' consumer protection laws and noting that "while Plaintiffs cite a number of cases outside our Circuit in support of their contention that many of their claims are not governed by Rule 9(b), the authorities are only persuasive under the aforementioned Second Circuit standard"); *Schwartzco*, 2014 WL 6390299, at *26 (E.D.N.Y. Nov. 17, 2014) (applying Second Circuit pleading standards to New Hampshire Consumer Protection Act claim).

Premier concedes that its "negligent misrepresentation claim forms the basis for the Chapter 93A claim." (Premier's Opp. 16.) As discussed above, this negligent misrepresentation claim sounds in fraud. Because this claim forms the basis of its Chapter 93A claim, Premier must plead this claim with the particularity required by Rule 9(b). Aside from allegations that Riker's conduct "occurred primarily and substantially within," was "directed to [Premier] in," was

14

"received, relied and acted upon" in, and resulted in damages within the Commonwealth of Massachusetts (Amd. Ans. ¶¶ 50-53), Premier's allegations in support of its Chapter 93A claim are no more detailed than its allegations in support of its misrepresentation claim. Without further factual support, the allegations regarding the location are no more than "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. These allegations cannot save the Chapter 93A claim from the same fate as the misrepresentation claim; it must be dismissed for its failure to meet Rule 9(b)'s pleading standard.

### C.    Breach of Contract

Premier brings a breach of contract counterclaim, alleging that Riker breached its agreements in each of the matters by performing work that was unauthorized by Premier and then billing for it, and by billing for amounts far exceeding the budgets presented. (Amd. Ans. ¶¶ 66-67.) "In order to state a claim of breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (citation omitted).

Riker argues that Premier fails to establish a breach, as it asserts that any budget figures were merely estimates, as opposed to price guarantees. (Riker's Mem. 24.) In making this argument, Riker relies on materials outside the pleadings, namely communications and "Budget Estimates" that it purports to have exchanged with Premier. (Riker's Mem. 2 n. 2.) However, the Court finds it inappropriate to rely on these materials at this stage. It is true that "[w]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss." *Int'l Audiotext*

*Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (citations and internal

quotation marks omitted). A document is integral where the plaintiff "reli[ed] on the terms and

effect of a document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147,

153 (2d Cir. 2002). Merely referencing the outside document is not sufficient to warrant

inclusion. *See Sira v. Morton*, 380 F.3d 57, 67 (2d. Cir. 2004) (declining to incorporate a

transcript, the contents of which were summarized in the complaint); *Cosmas v. Hasset*, 886 F.2d

8, 13 (2d Cir. 1989) (declining to incorporate an annual report from which the complaint took

"short quotations").

     Here, the materials submitted by Riker are not clearly integral, as the Court cannot say

that Premier necessarily relied on these particular communications in drafting its counterclaims.

As discussed above, Premier's allegations are not specific as to the date and form of the budget

estimates, and so the Court cannot determine whether the materials submitted by Riker in fact are

the materials to which Premier refers. Therefore, the Court declines to consider the outside

materials submitted by Riker for the purposes of this motion. Looking only to the allegations in

the counterclaims, Premier has adequately pled the element of breach, as it pleads that the parties

agreed to proposals requiring Premier's consent for expansions of the scope of the work or

additional spending, and Riker undertook such expansions without Premier's consent.

     Riker also argues that the breach of contract claim must be dismissed because Premier

alleges that it made payments, and those payments, without objection, served to ratify Riker's

performance of those tasks and Riker's billing of Premier for those tasks. (Riker's Mem. 24.) "In

order to find a ratification, it is necessary to show that the principal had knowledge of the

material facts and circumstances and that he acted in the light of such knowledge." *Quintel*

*Corp., N.V. v. Citibank, N.A.*, 606 F. Supp. 898, 912 (S.D.N.Y. 1985) (citation and internal

quotation marks omitted). "[R]atification is an affirmative defense and the burden of proof

belongs to the defendant." *Banque Arabe Et Internationale D'Investissement v. Maryland Nat.

Bank*, 850 F. Supp. 1199, 1213 (S.D.N.Y. 1994), *aff'd*, 57 F.3d 146 (2d Cir. 1995). As an

affirmative defense to liability, "it may only be raised by a pre-motion answer to dismiss if the

defense appears on the face of the complaint." *Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ.

3934 (AT), 2016 WL 3369541, at *15 (S.D.N.Y. June 17, 2016) (quoting *Pan v. Empire Blue

Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)) (alterations and internal quotation marks

omitted). It is not clear from the face of the complaint that Premier had knowledge of the

material facts and circumstances at the time of the purported ratification, and thus, the Court

cannot now dismiss on ratification grounds.

The cases which Riker cites in support of its argument that dismissal is warranted at this

stage are unpersuasive, as those cases address ratification at a later stage in proceedings. *See,

e.g.*, *Apex Pool Equip. Corp. v. Lee*, 419 F.2d 556, 557 (2d Cir. 1969) (after bench trial); *New

York Tel. Co. v. Jamestown Tel. Corp.*, 282 N.Y. 365, 367 (N.Y. 1940) (after directed verdict);

*Melnitzky v. Sotheby Parke Bernet, Inc.*, 300 A.D.2d 201, 201, 750 N.Y.S.2d 859 (1st Dept.

2002) (summary judgment). While ratification may ultimately prove to be grounds for judgment

in Riker's favor, it is not grounds for dismissal at this stage.

### D.    Unjust Enrichment

Premier brings a claim of unjust enrichment, arguing that Riker received a substantial

benefit by way of Premier's payment in connection with the DNR Construction matter, and that

Riker's retention of that benefit is unjust because a court found that the reasonable value of

Riker's work in connection with the matter was $8,000, whereas Riker billed (and Premier paid)

more than $70,000 in connection with the matter. (Amd. Ans. ¶ 56.) Riker argues that because

the parties entered into a contract with regard to the DNR Construction Matter, Premier may not bring an unjust enrichment claim.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Tasini v. AOL, Inc.*, 505 F. App'x 45, 47 (2d Cir. 2012) (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)). However, "[u]njust enrichment is a quasi-contractual claim that ordinarily can be maintained only in the absence of a valid, enforceable contract." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 202 (S.D.N.Y. 2011) (citations and internal quotation marks omitted); *see also Oorah, Inc. v. Schick*, 552 F. App'x 20, 23 (2d Cir. 2014). Only if "there is a bona fide dispute concerning whether the contract covers the dispute in issue" may "the quasi-contract claim . . . be pled in the alternative." *Minnie Rose*, 2016 WL 1049020, at *12 (quoting *Nahabedian v. Intercloud Sys., Inc.*, 15 Civ. 00669 (RA), 2016 WL 155084, at *4 (S.D.N.Y. Jan. 12, 2016)).

Here, a valid contract governed the fee agreement between Riker and Premier. Premier alleges that in the DNR Construction Matter, it "engaged Riker to represent [it]," and "engaged Riker based on the budget provided by Riker." (Amd. Ans. ¶¶ 32-33.) Premier alleges that it engaged Riker to handle the matter "subject to budgets and other terms and conditions, including that any tasks and fees outside the budget be pre-authorized by Premier," and that "Riker breached these agreements by performing work that was unauthorized . . . and then billing for it, as well as billing . . . for amounts that far exceeded the budgets presented. . . ." (*Id.* at ¶¶ 66-67.) Further, in its answer, Premier admits that it retained Riker in connection with the DNR Construction Action. (Amd. Ans. p. 3 ¶ 23.) In sum, Premier does not dispute the existence of a

valid contract between Riker and itself formed in relation to the DNR Construction Matter. Premier alleges that Riker's overbilling constituted a breach of the contract, and it alleges that this same overbilling serves as a basis for it to recover under unjust enrichment. (*See* Amd. Ans. ¶ 56.) Because a valid contract governs the subject matter—billing in relation to the DNR Construction Matter—Premier is precluded from recovering in quasi-contract for events arising out of the same subject matter. Premier may not plead this claim in the alternative, because there is no bona fide dispute concerning whether the contract covers the dispute in issue: not only is there no dispute over the existence of a contract but the contract at hand covers the fee arrangement.

There are numerous examples of cases where the parties agreed to a contract and plaintiffs alleged overbilling under that contract; in those cases, courts have found that plaintiffs cannot sustain both breach of contract and quasi-contract claims. *See, e.g., UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426, 439 (S.D.N.Y. 2015) ("Here, the Hagans' counterclaim rests on a theory that UPS and the Franchisees continue to receive overcharges . . . to the extent their claim relies on obligations created by the Franchise Agreements . . . it is barred because a valid and enforceable contract precludes quasi-contractual recovery in New York." (citation omitted)); *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 504 (S.D.N.Y. 2007) ("Payday asserts in its Complaint that the alleged overcharges breached its contract . . . The subject matter of Payday's unjust enrichment claim is therefore governed by the contract, which the parties do not dispute existed."); *Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc.*, No. 11 Civ. 4509, 2013 WL 1385210, at *4 (S.D.N.Y. Mar. 18, 2013) ("[W]hile Plaintiffs have asserted facts supporting that they were improperly billed . . . they have not asserted facts supporting that these overcharges were extraneous to the parties' contracts. . . . Therefore,

Plaintiffs' unjust enrichment and money had and received claims are dismissed."). That is the situation here, and so Premier's unjust enrichment claim is dismissed.[2]

### E.  Legal Malpractice

Finally, Premier brings a claim of legal malpractice in relation to the Roche-Kelly Matter. In order to state a claim for legal malpractice under New York law, a plaintiff must demonstrate "that an attorney-client relationship existed," *Gottlieb*, 2015 WL 4206982, at *4 (citing *Maddux v. Schur*, 791 N.Y.S.2d 704, 705 (3rd Dept. 2005)), and "that the attorney was negligent, that the negligence was the proximate cause of the injury, and that she suffered actual and ascertainable damages." *Henkel v. Wagner*, 553 F. App'x 106, 107 (2d Cir. 2014) (quoting *Rubens v. Mason*, 527 F.3d 252, 254-55 (2d Cir. 2008)).

Riker argues that Premier has not sufficiently alleged proximate cause. "A plaintiff claiming legal malpractice must meet a case within a case requirement, and must demonstrate that a reasonable fact-finder [in the present case] could conclude that a 'reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence.'" *Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*, No. 12 Civ. 9459 (PAE), 2013 WL 3357921, at *6 (S.D.N.Y. July 2, 2013), *aff'd*, 552 F. App'x 79 (2d Cir. 2014) (quoting *Rubens v. Mason*, 527 F.3d 252, 255 (2d Cir. 2008)). "Counsel's alleged misconduct is not the proximate cause of the harm if the client cannot demonstrate its own likelihood of success absent such misconduct." *Shaub & Williams, L.L.P. v. Augme Techs., Inc.*, No. 13 Civ. 1101 (GBD), 2014 WL 625390, at *5 (S.D.N.Y. Feb. 14, 2014) (quoting *Pellegrino v. File*, 738 N.Y.S.2d 320, 323 (1st Dept. 2002)) (alterations omitted).

---

[2] The Court gives little weight to Premier's argument that Riker admits the quasi-contract claim is distinct from the breach of contract claim based on Riker's own inclusion of both claims in its complaint. (Premier's Opp. 9.) The fact that both sides may have attempted to raise both claims does not make their attempts permissible. Furthermore, Riker has since indicated that it wishes to withdraw its unjust enrichment claim. (Riker's Reply 9.)

At the motion to dismiss stage, a plaintiff "need only allege, not prove, the proximate cause element of the legal malpractice claim." *Gottlieb*, 2015 WL 4206982, at *5 (quoting *Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP*, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008)); *see also Armendariz v. Horowitz Law Grp., LLC*, No. 14 Civ. 4070 (LAP), 2015 WL 1849871, at *4 (S.D.N.Y. Apr. 22, 2015) (same). Even so, "[m]ere speculation of a loss resulting from an attorney's alleged omissions is insufficient to sustain a prima facie case sounding in legal malpractice." *Preferred Fragrance, Inc. v. Buchanan Ingersoll & Rooney PC*, No. 15 Civ. 1293 (BMC), 2015 WL 6143612, at *3 (E.D.N.Y. Oct. 18, 2015) (quoting *Diamond v. Sokol*, 468 F. Supp. 2d 626, 633-34 (S.D.N.Y. 2006)) (alteration omitted).

Here, the counterclaim alleges that Riker failed to fulfill its duty to Premier through its failure to timely file an adversary action objecting to the bankruptcy discharge and its failure to seek or complete critical discovery of the debtor. (Amd. Ans. ¶¶ 60, 62.) These failures, the counterclaim alleges, resulted in the unopposed discharge of Roche-Kelly's debt and thus the loss of a more than $800,000 judgment against Roche-Kelly. (*Id.* at ¶ 64.) But while the bar for establishing proximate cause is not high at this stage of litigation, *see Gottlieb*, 2015 WL 4206982, at *5, Premier does not meet it here because, as Riker points out, Premier does not plausibly claim that it would have recovered anything from Roche-Kelly under any circumstances. This is because the trustee appointed by the Bankruptcy Court reported:

> I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and . . . there is no property available for distribution from the estate over and above that exempted by law. . . . Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 4367466.56.

Dkt. Entry dated Mar. 30, 2015, *In Re Delia Roche-Kelly*, No. 13-13205 (Bankr. S.D.N.Y.).[3]

---

[3] To decide a motion to dismiss, the Court may consider "matters of which judicial notice may be taken." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). "Judicial notice may encompass the status of other lawsuits

Even taking as true that Riker failed in its discovery obligations and thus failed to preserve Premier's right to object to the debtor's discharge, the counterclaim is devoid of allegations that any objection to the debtor's discharge would have succeeded. Riker "has alleged no facts that indicate that, but for alleged instances of [Riker's] misconduct, the outcome of its . . . lawsuit would have been anything other than" the discharge of the debtor's debt, let alone that Premier "would have been 'likely to succeed' in the . . . action, as required under New York law." *Shaub*, 2014 WL 625390, at *5 (quoting *Pellegrino*, 738 N.Y.S.2d at 323). Given this shortcoming, Premier has failed to sufficiently plead the proximate cause element of legal malpractice and its legal malpractice claim must be dismissed.

## CONCLUSION

For the reasons set forth above, Premier's counterclaims alleging misrepresentation, violation of Massachusetts General Law Chapter 93A, unjust enrichment, and legal malpractice are dismissed. Premier's counterclaim alleging breach of contract remains. The Court will hold a status conference on October 14, 2016, at 10:15 a.m. The parties (and/or counsel) should appear in person in Courtroom 1306 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY, on the date and time specified above.

This terminates ECF No. 37.

**SO ORDERED.**

**Dated**:    September 21, 2016
New York, New York

ANDREW L. CARTER, JR.
United States District Judge

---

in other courts and the substance of papers filed in those actions." *Johnson v. Levy*, 812 F. Supp. 2d 167, 176 (E.D.N.Y. 2011) (citation omitted); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). But though a court may take judicial notice of an opinion by another court, "it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted).